*In re* MARRIAGE OF CHARLOTTE Y. ROWE, Plaintiff-Appellee, and CLOYCE E. ROWE, Defendant-Appellant.

Third District   No. 3—84—0365

Opinion filed February 5, 1985.

C. Stephen Marsh, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

James J. Mesich, of Gende, Mesich & Beatty, of Moline, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from the division of marital property upon the dissolution of the marriage of Charlotte Rowe, the plaintiff, and Cloyce Rowe, the defendant. Cloyce appeals the division of the marital assets by the circuit court of Rock Island County. Cloyce was awarded two businesses, Uniform World, Inc., and Uniform City, Inc., and Charlotte was awarded the marital home.

Cloyce raises three issues on appeal. First, he argues that the two uniform businesses were improperly classified as marital property; second, that the two businesses were overvalued; and third, even if they were properly classified as marital property the trial court erred because it failed to reimburse the defendant's nonmarital estate for contributions made from his nonmarital property.

The two uniform businesses in question were incorporated in 1972 and 1974. The couple was married in 1967. At the time of their marriage Cloyce was a shareholder and employee of Kaybee-Moline, Inc., in which he owned 150 shares which he had purchased in 1963. Subsequent to their marriage, Cloyce purchased 250 more shares of Kaybee-Moline stock and became the sole shareholder. In 1979, Kaybee-Moline, Inc., was liquidated, the trial court found, at a loss to creditors and presumably with a total loss to the owner.

■■ Cloyce argues that both uniform businesses were established with funds from Kaybee-Moline, Inc., and that the additional stock acquired after their marriage was acquired from funds previously accu-

mulated by Cloyce. Therefore, Cloyce reasons, the two businesses were his nonmarital assets. We disagree. All property acquired during marriage is presumed marital property and "[t]he presumption \*\*\* is overcome by showing that the property was acquired by a method listed in Sub-Section (a) of this Section." (Ill. Rev. Stat. 1983, ch. 40, par. 503(b).) Subsection (a) of section 503 of the Illinois Marriage and Dissolution of Marriage Act excepts certain property from "marital property." The part of subsection (a) applicable to this case is "(2) property acquired in exchange for property acquired before the marriage \*\*\*" (Ill. Rev. Stat. 1983, ch. 40, par. 503(a)). Far from proving that the uniform businesses were acquired in exchange for Kaybee-Moline, Inc., the evidence suggests just the opposite. Cloyce admits in his brief that Kaybee-Moline was liquidated five years after the first uniform business was formed and three years after the formation of the second business. Furthermore, the trial court found that Cloyce presented no evidence that he had $30,000 to $40,000 in the bank at the time he was married. In fact, Cloyce's tax return for the year prior to his marriage showed only $96 in "other income." The trial court found that the success of the two uniform businesses was due to the joint efforts of Cloyce and Charlotte. We will not disturb the findings of the trial court when no other evidence except Cloyce's testimony exists to overcome the presumption created by the statute.

The next issue raised by Cloyce is that the businesses were overvalued because the accountant who testified as to their value took future earnings of the corporation into consideration in determining their value. Cloyce relies largely upon *In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 466 N.E.2d 290, where the Fifth District held that the valuation of the husband's insurance agency based upon discounted present value of future earnings was not a proper method of valuation under the Illinois Marriage and Dissolution of Marriage Act because of the nature of the husband's business. In *Frazier*, the husband's earnings from the business were based solely upon a percentage of the commissions generated by premium payments; he had no exclusive territory, and State Farm had the right to transfer any automobile policy to another agent upon written notice. The business could be terminated upon notice by State Farm with only a termination payment by State Farm.

Unlike the agency valued in *Frazier*, the uniform businesses in this case were not service-oriented businesses which relied solely upon the continuous "personally produced" services of Cloyce. They were well-established ongoing businesses to which Charlotte, too, had contributed her time and efforts. The businesses had inventory and equip-

ment and would not disappear as entities if Cloyce were forced to leave the businesses. The uniform businesses were marketable and had a present value if they were offered for sale at the time of the dissolution in spite of liabilities based upon the corporations' future earnings and good will. Therefore, the rationale of *Frazier* is not applicable to the facts of this case because of the differences in the agency and the two corporations in this case. The reasoning which supports the decision in *Frazier* does not support the reasoning in this case. We also note that the valuation of the two businesses at $170,000, as found by the trial court, is based upon accepted accounting principles and is supported by the evidence.

■ As to the final allegation of error, we find that because defendant never proved that he contributed nonmarital assets to the uniform businesses, the trial court did not err in refusing to reimburse Cloyce's nonmarital estate.

We, therefore, affirm the decision of the circuit court of Rock Island County.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.